```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3                              - - -

 4   HELIOS SOFTWARE, LLC and PEARL        :    CIVIL ACTION
     SOFTWARE, INC.,                       :
 5                                         :
                 Plaintiffs,               :
 6   v                                     :
                                           :
 7   AWARENESS TECHNOLOGIES INC.,          :
     REMOTE COMPUTER OBSERVATION           :
 8   & MONITORING, LLC d/b/a REMOTECOM,    :
                                           :    NO. 11-1259-LPS
 9               Defendants.               :
                              - - -

10
                            Wilmington, Delaware
11                          Friday, October 2, 2015
                              Pretrial Conference
12
                              - - -
13
     BEFORE:          HONORABLE LEONARD P. STARK, Chief Judge
14
      APPEARANCES:                     - - -
15
                 YOUNG CONAWAY STARGATT & TAYLOR, LLC
16               BY:  MONTE T. SQUIRE, ESQ.

17                    and

18               TAYLOR DUNHAM and RODRIGUEZ, LLP
                 BY:  CABRACH J. CONNOR, ESQ.
19                    (Austin, Texas)

20                       Counsel for Helios Software, LLC and
                         Pearl Software, Inc.
21
                 O'KELLY, ERNST & BIELLI, LLC
22               BY:  GEORGE PAZUNIAK, ESQ.

23                       Counsel for Awareness Technologies Inc.
                         and Remote Computer Observation &
24                       Monitoring LC d/b/a RemoteCOM

25                              Brian P. Gaffigan
                                Registered Merit Reporter
```

1                          - oOo -

2                  P R O C E E D I N G S

3              (REPORTER'S NOTE:  The following pretrial

4    conference was held in open court, beginning at 11:07 a.m.)

5              THE COURT:  Good morning, everyone.

6              (The attorneys respond, "Good morning, Your Honor.")

7              THE COURT:  Let me have you put your appearances

8    on the record for me, please.

9              MR. SQUIRE:  Yes, Your Honor.  Monte Squire from

10   Young Conaway on behalf of the plaintiff, Helios Software

11   and Pearl Software.  I'm joined with my co-counsel, Cabrach

12   Connor of Taylor, Dunham & Rodriguez in Texas; and we're

13   also jointed by the client, David Fertell of Helios Software

14   and Pearl Software.

15             THE COURT:  Welcome back to all of you.

16             MR. SQUIRE:  Thank you, Your Honor.

17             MR. CONNOR:  Thank you, Your Honor.

18             MR. PAZUNIAK:  Good morning, Your Honor.

19             THE COURT:  Good morning.

20             MR. PAZUNIAK:  George Pazuniak for defendants

21   Awareness and Remote Communication.

22             THE COURT:  Welcome to you.  Have a seat,

23   please.

24             We're here for the pretrial conference for the

25   bench trial we have for I believe it's, yes, exactly two

1    weeks from today.  Those of you who have had trials in front

2    of me you will find this quite unusual.  I really don't have

3    an agenda for the pretrial conference because you gave me a

4    remarkably clean pretrial order.  I saw just a couple things

5    that were even in dispute.

6              I'm happy, of course, to talk about those, but I

7    thought it best just to turn it over to you all of you and

8    tell me what you need for know to me to get ready for this

9    bench trial because it really looks like you are basically

10   ready to go.

11             So, Mr. Squire, Mr. Connor, why don't you begin

12   and tell me what you think we should be doing with our time

13   together today.

14             MR. CONNOR:  Sure, Your Honor.

15             THE COURT:  I'll have you come to the podium.

16             MR. CONNOR:  Thank you.

17             So the issue that the plaintiffs have is

18   regarding who will be permitted to testify as an expert

19   on behalf of the defendants at the trial.  We learned, in

20   the course of preparing the pretrial order, that Mr./Dr.

21   Reinman who was the designated expert in the Awareness

22   case is unavailable to attend the trial and as a result,

23   Awareness counsel informed us that they intended to

24   engage Dr. Geoffrey Cohen and Elysium Digital who was the

25   designated expert in the SpectorSoft case in the Awareness

1    case and have him come and testify in place of Dr. Reinman.

2              We objected to that, and we inquired of

3    Awareness the circumstances and also confirmed with

4    SpectorSoft's counsel and for several reasons, we believe

5    that it would be improper for allow at this late date

6    Dr. Cohen to testify in the Awareness case for procedural

7    reasons, substantive reasons, and then a couple of reasons

8    related to the settlement agreement with SpectorSoft.

9              THE COURT:  All right.  And maybe that one is

10   where my questioning goes to, but this trial, until a few

11   days ago, was an Awareness and SpectorSoft trial.  Correct?

12             MR. CONNOR:  Correct, Your Honor yes.

13             THE COURT:  Would you be raising these

14   objections if SpectorSoft were still in the case?

15             MR. CONNOR:  We would not.

16             THE COURT:  Because SpectorSoft had already

17   employed Dr. Cohen; correct?

18             MR. CONNOR:  Yes.

19             THE COURT:  All right.  So then why don't you

20   focus on why I shouldn't view it any different than I would

21   have if SpectorSoft were still here.

22             MR. CONNOR:  Sure.  With SpectorSoft outside of

23   the case, there is evidence from the SpectorSoft case that

24   will not be presented at trial.  There are witnesses,

25   SpectorSoft party witnesses Mr. Chesley and Mr. Trivedi who

1    will not be testifying at trial, and Awareness has objected

2    to our playing that testimony.  And, of course, if there is

3    no live corporate rep at the trial, we're not able to put on

4    a live witness from SpectorSoft.

5            Those witnesses testified that there are

6    differences between the way that the architecture worked in

7    the alleged prior art and the claims that are at issue in

8    this bench trial.  So the issue is going to be materiality

9    with respect to these witnesses.

10           The burden that Awareness has is to show that

11   but for the non-disclosure of prior art, these claims would

12   have issued.  So in a sense, they have to prove under their

13   theory -- and the theories are not the same in the cases,

14   but under whatever theory is advanced that it is either

15   obviating or rendering or existing in the claims, the prior

16   art being the plaintiff's prior product called Cyber Snoop

17   Enterprise.

18           During the course of the SpectorSoft case, we

19   deposed SpectorSoft party witnesses, their technical people,

20   and their founder Mr. Chesley who testified at trial here

21   last summer.  And we asked them questions about the

22   differences between doing it, and I'm going to use shorthand

23   here, at the server versus doing this access control at the

24   client.

25           Your Honor will hear a lot about that in the

1      trial because that is the fundamental difference between

2      the prior art and what was claimed in the '237 patent as

3      well as some other attendant limitations that enable that

4      architecture.  Those witnesses in the SpectorSoft case

5      testified that there were differences and that those

6      different differences were substantial.

7              In the Awareness case, Dr. Reinman, Awareness'

8      expert, he proffered opinions in his supplemental report that

9      at least on their face were consistent with Dr. Cohen's.

10             At his deposition, I asked him:  Well, are

11     there differences between doing it at the client and doing

12     it at the server?  He acknowledged that there were.  He

13     also testified at his deposition about disagreements that

14     he had with Dr. Cohen and Dr. Cohen's opinions.  Those

15     disagreements and positions we didn't know until his

16     deposition.

17             So now, fast forward to the bench trial.  As Your

18     Honor noted, until recently, the plan was that SpectorSoft and

19     Awareness would share time, presumably present their positions

20     respectively, and that we would have the opportunity to

21     examine their experts play their party witness testimony that

22     in our view rebut and undermines the positions that they have

23     taken on inequitable conduct and specifically materiality.

24             And now what we have is that Awareness, with

25     SpectorSoft out of the case, Awareness has decided I like

1    these theories better, and we're not going to bring our

2    expert to trial, and we're going to choose a different

3    expert with different theories that precludes from the

4    plaintiffs the opportunity of deposing Dr. Cohen in the

5    context of the facts that were elicited in circumstances in

6    the Awareness cases.  Specifically, the architecture that

7    Awareness used, because that was relevant in the Dr. Reinman

8    deposition.  And that is how, in fact, we got to some of the

9    points that Dr. Reinman made, acknowledged in his deposition

10   that there was a difference in the architecture.

11              THE COURT:  The inequitable conduct issue is the

12   same for SpectorSoft and Awareness, isn't it?

13              MR. CONNOR:  The inequitable conduct issue is

14   the same, but the materiality element that they must prove

15   was developed differently.

16              THE COURT:  Well, they may have developed it

17   differently, but it is the same ultimate inquiry for the

18   Court, isn't it?  They pointed to the same prior art that

19   they say should have been disclosed to the PTO, did they

20   not?

21              MR. CONNOR:  They pointed to -- yes, they

22   characterized and testified about it differently.  So the

23   real prejudice at trial that we face is that we, with both

24   of them here, Your Honor will hear how they cannot agree.

25   With just Awareness here, you will hear that Dr. Reinman

1   disagreed with Dr. Cohen's opinions; and Dr. Reinman in fact

2   testified in his deposition that he did not believe that one

3   of the combinations that we expect they will assert did not,

4   in fact, render obvious the claims.

5           THE COURT:  Why shouldn't I view it as a

6   situation you were planning to and were presumably prepared

7   to counter two different theories of materiality, now

8   evidently you are only going to have to respond to one at

9   trial, and so benefit to you?

10          MR. CONNOR:  Well, because of the fact that

11  there were two theories presented at trial by the defendants

12  and those theories were inconsistent we believe shows that

13  those theories cannot support the clear and convincing

14  burden that they have.

15          THE COURT:  And what if you were permitted

16  to try to present to me in one fashion or another that

17  purported conflict even though not both theories are any

18  longer evidently being pressed by the defendants?

19          MR. CONNOR:  That would certainly mitigate some

20  of the prejudice, Your Honor, and we acknowledge that.  And,

21  of course, that is the relief that we would ask for if Your

22  Honor decides to allow Dr. Cohen to be engaged by Awareness

23  at this point two weeks before trial, but there is a second

24  point to that.

25          There is a benefit of the bargain that the

1    plaintiffs reached with SpectorSoft when they settled that

2    case.  And the benefit of that bargain was that all of

3    those issues, those theories, those positions, and all of

4    the facts and testimony in the SpectorSoft case was over.

5    And in the settlement agreement with SpectorSoft, there is

6    a provision that prohibits SpectorSoft, its consultants,

7    agents, from aiding, abiding, or assisting a third party in

8    challenging or alleging any claims against the plaintiffs.

9    The plaintiffs negotiated for that term, and it's in the

10   agreement.

11            Plaintiffs also were aware at that time of the

12   engagement agreement that SpectorSoft has with Dr. Cohen and

13   his firm, and that agreement clearly states that Dr. Cohen

14   may not work for somebody else after, even after the case.

15   And I have a copy to hand to Your Honor, if you wish.

16            THE COURT:  I don't need to see it.  Help me

17   understand why, even accepting that you reached that deal,

18   why the Court should be part of allowing that to occur in a

19   way that may be prejudicial to a party that is in front of

20   me, Awareness, and may interfere, if enforced, with this

21   Court's ability to search for the truth as to whether or not

22   there was inequitable conduct.

23            MR. CONNOR:  Because the facts that were developed

24   in the Awareness case are the facts in the Awareness case.

25   And however this falls out, if Geoff Cohen is not allowed to

1    testify at this trial and present theories from another case,

2    the truth is still going to be found because we've got able

3    litigants who are going to present their competing theories

4    and cross-examine those witnesses.  But the unfair surprise

5    here to the plaintiffs in gutting the plaintiffs' benefit of

6    the bargain they reached with SpectorSoft, that prejudice

7    would not be resolved.  And that is unfair to the plaintiffs.

8           THE COURT:  All right.  Let me hear from

9    Mr. Pazuniak.  Thank you.

10          MR. PAZUNIAK:  Good morning.

11          THE COURT:  Good morning.

12          MR. PAZUNIAK:  Thank you, Your Honor.  Let me

13   just start back with the agreement, and the apparently no

14   assistance part of it.

15          That agreement has never been provided to us.

16   I have no idea what that agreement is.  What I can assure

17   plaintiffs and the Court is that we're not getting my help

18   from SpectorSoft.  SpectorSoft's a counsel has not assisted

19   us and is not planning to assist us in any way.  So Dr.

20   Cohen is my problem, not SpectorSoft's counsel's problem.

21          THE COURT:  Well, if I allow it, how are you

22   going to get Dr. Cohen to come to trial?

23          MR. PAZUNIAK:  Okay.  So if I could just

24   briefly.  I don't think that what Mr. Connor stated was

25   complete, so let me just add a little bit to it.

1          This Court set this consolidated trial in the

2     inequitable conduct on June 8th, 2015.  At that point, the

3     inequitable conduct case had already been set in SpectorSoft.

4     So Dr. Cohen had already been previously designated to

5     testify, materiality, had filed his expert reports.  He had

6     been deposed.

7          Then after that, I became engaged and entered

8     the substitution of counsel.  On June 30th, the parties

9     filed a status report, that's D.I. 332, which said that,

10    hey, we're going into a consolidated bench trial with

11    SpectorSoft case on October 16th.

12         Then in August, mid-August, SpectorSoft's

13    counsel, on behalf of both -- and it's in the letter, had

14    captions for both cases, and with my approval, sent the

15    letter to plaintiffs' counsel saying, okay, let's get ready

16    for the pretrial.  The pretrial order, you know, here is the

17    dates.  Let's get together and talk.

18         The parties did talk.  And on September 14th,

19    the SpectorSoft and Awareness defendants jointly submitted

20    a draft pretrial order that specified only one expert

21    witness, and that was Dr. Cohen.  There was no suggestion

22    that that Dr. Reinman was ever going to testify.

23         Prior to that, of course, SpectorSoft's counsel

24    and I discussed this, and we agreed that with a timed trial,

25    there is only so much time that we can present evidence.

1      There was no way we could present two experts and try to

2      meet the Court's time limit, and so we simply designated

3      Dr. Cohen to testify in the consolidated cases for both

4      parties.  No objection from plaintiffs on that.

5              So we go, we exchange all the documents, exhibit

6      lists, proposed testimony.  The pretrial order is due to be

7      filed on September 25, at 6:00 p.m.  I find out about the

8      settlement the evening of September 24th, literally 24 hours

9      before the pretrial order is due.

10             So at that point, I had, that day of September

11     25, I had to make some choices.  One is I had to revise the

12     pretrial order so there was only one party and eliminate, a

13     bunch of things changed.  Plaintiffs' counsel and I had some

14     exchanges of e-mails, telephone conversations, et cetera.

15             I did check with Dr. Reinman.  I found out very

16     quickly that plaintiff would say, hold it, how could you

17     call Dr. Cohen?  I said, let me check with Dr. Reinman and

18     found out from him that in some point earlier than that,

19     he had already agreed to act as an expert in another case

20     and, therefore, there was no way for him to be available to

21     testify on October 16.  I so advised plaintiffs and said,

22     well, with that, we're sticking with Dr. Cohen.

23             Thereafter, I contacted -- not SpectorSoft's

24     counsel but I contacted Dr. Cohen, confirmed that he was

25     still available.  There was no problem.  And I requested

1    him to appear here.

2         I think that this entire consolidated case has

3    always been one side being Helios and Pearl plaintiffs, the

4    other side being the SpectorSoft, Awareness defendants.

5    So there has always been two sides.  Dr. Cohen was the

6    designated expert for both Awareness and SpectorSoft, and

7    there was no problem.

8         Now, Mr. Connor says that, oh, we were going to

9    ask Dr. Reinman about -- I'm not quite sure what he was,

10   what he was arguing about Dr. Reinman because Dr. Reinman

11   was never scheduled to be a witness.  Moreover, they deposed

12   Dr. Reinman, and they designated portions of his testimony,

13   and that is in the pretrial order.

14        THE COURT:  Do you have any objection to them

15   playing that?

16        MR. PAZUNIAK:  No.  We counterdesignated, but we

17   didn't object.  So there is no objection to them bringing in

18   whatever they want to do with Dr. Reinman.  As a sideline, I

19   don't believe there is any inconsistency, but if there is,

20   they can bring it up.

21        THE COURT:  Let's go back to where we started.

22   How are you going to get Dr. Cohen here to trial without the

23   cooperation of SpectorSoft and perhaps in breach of his own

24   agreement with SpectorSoft?

25        MR. PAZUNIAK:  I retained Dr. Cohen.  He has

1    agreed to come in and testify here.  SpectorSoft has no

2    involvement.  Awareness is paying his fees and his travel

3    expenses.

4              THE COURT:  You don't need a subpoena.

5              MR. PAZUNIAK:  No, no.  He is going to appear.

6              THE COURT:  If I were to entertain a continuance

7    of trial to a date that Dr. Reinman would be available, is

8    there such a date or is he gone to us at this point?

9              MR. PAZUNIAK:  I haven't checked on it.  I know

10   he was retained for -- he was retained for another case.  I

11   don't have the details.  I just talked to him.  I said,

12   look --

13             THE COURT:  Should I consider maybe there is no

14   urgency to October 16, maybe we should go back to Plan A

15   which is you have already retained Dr. Reinman.  Let's find

16   a date that works for everyone, including him.

17             MR. PAZUNIAK:  Well, that is certainly a

18   possibility.  But I think, Your Honor, that we have already

19   all planned on October 16th.  And the question is, is there

20   any justification why the decisions by plaintiffs and

21   SpectorSoft to settle should change the date and the ability

22   of Dr. Cohen to appear?

23             I may point out that the arguments that I have

24   heard earlier today about some relevance to what -- and

25   I'm still not sure whether it is what Awareness did or

1    SpectorSoft did.  It doesn't make any sense.  The only

2    issues are the intent of the inventors and the materiality.

3    Materiality is a pure issue of comparing the Cyber Snoop

4    Enterprise prior art against the claims.  What SpectorSoft

5    did or what Awareness did and anything like that, just I

6    have never seen a case where those issues have ever come up

7    in an inequitable conduct.

8              Moreover, in the Awareness case, the Court has

9    already granted summary judgment of noninfringement.

10   Plaintiffs have withdrawn their claims of infringement as to

11   the third patent.  So what in the world does this comparison

12   of alleged infringements to the claims have to do with whether

13   or not Cyber Snoop Enterprise was material prior art?  The

14   whole thing just doesn't make any sense.

15             THE COURT:  We have a trial scheduled for

16   December as well on invalidity; is that correct?

17             MR. PAZUNIAK:  Yes.

18             THE COURT:  Is Dr. Reinman expected to appear at

19   that trial?

20             MR. PAZUNIAK:  Yes.

21             THE COURT:  So what, if any, prejudice would

22   there be to your client if I just simply continued this part

23   of the trial as well to December in light of Dr. Reinman's

24   unavailability?

25             MR. PAZUNIAK:  I can't say there is a whole lot

1    of prejudice other than we wanted to get this case over and

2    done with and had already planned for October 16th.

3              THE COURT:  And if I continued it, though, the

4    idea would be you wouldn't need Dr. Cohen; right?  Just go

5    back to Plan A.

6              MR. PAZUNIAK:  Your Honor, I need to just be

7    careful about what I say.

8              As far as I know, back awhile ago, Dr. Reinman

9    was available.  I have to confirm with him what may have

10   happened in the meantime.

11             THE COURT:  If he is available.  I mean he must

12   be available for trial that has been on the calendar for

13   December.

14             MR. PAZUNIAK:  Right.

15             THE COURT:  For as long as this one certainly

16   has been.  But, again, if I were to entertain that, your

17   client would not be prejudiced, you'd have your expert that

18   you've had from the beginning of the case and Dr. Cohen

19   would be free and clear, and we wouldn't have to worry about

20   him.  Right?

21             MR. PAZUNIAK:  That's correct, Your Honor.

22             THE COURT:  All right.  Thank you.

23             Mr. Connor, let me get you back up here and,

24   at a minimum, address this idea that has popped into my

25   head that maybe I ought to just continue this to December.

1              MR. CONNOR:  That would be fine with the

2    plaintiffs, Your Honor.  We do have a two day jury trial set

3    for December the 14th with a pretrial I think a week or two

4    before that.

5              THE COURT:  So I have to make sure I have

6    another day right around there so as to not to inconvenience

7    Dr. Reinman or anyone else.  But you clearly have no

8    objection to that, I think you said.

9              MR. CONNOR:  That's correct, Your Honor.

10             THE COURT:  On the chances that I may not to

11   that, if there is anything you want to say in response to

12   whatever else you heard from Mr. Pazuniak, you may.

13             MR. CONNOR:  We heard that Awareness has engaged

14   Dr. Cohen.  And I have asked SpectorSoft's counsel if we may

15   inform the Court and Awareness of the relevant term in the

16   settlement agreement that we believe prohibits that conduct.

17   I'd like to present that to Your Honor, if I may.

18             THE COURT:  Meaning you are comfortable you have

19   the permission you think you need.

20             MR. CONNOR:  Yes, Your Honor.

21             THE COURT:  You can go ahead and present it, if

22   you would like.

23             MR. CONNOR:  The parties agree on behalf of

24   themselves, respectively, and on behalf of their respective

25   principals, officers, directors, shareholders, members,

1    managers, employees, consultants --

2              MR. PAZUNIAK:  I'm sorry, Your Honor.  I don't

3    want to interrupt, but can I have a copy of that, please?

4              THE COURT:  I assume Mr. Connor will be able to

5    provide you a copy of the provision he is reading into the

6    record.

7              MR. CONNOR:  Sure.

8              MR. PAZUNIAK:  I'd like to see the whole

9    agreement, not just a selected part of it.

10             THE COURT:  Do you have an objection to that?

11             MR. CONNOR:  I do.

12             THE COURT:  You have an objection?

13             MR. CONNOR:  I do.

14             MR. PAZUNIAK:  Your Honor.

15             THE COURT:  Hold on, Mr. Pazuniak.  Have a seat,

16   please.

17             We're not going to do too much more of this,

18   but, Mr. Connor, go back to where you were.  If you want to

19   read that provision into the record, you may.

20             MR. CONNOR:  Thank you, Your Honor.

21             (Continuing):  -- consultants, agents,

22   attorneys, parents, subsidiaries, affiliates, divisions,

23   predecessors, and legal successors, not to cooperate, aid,

24   abet, or in any way assist any third party in connection

25   with any claim, defense, Patent Office proceeding or

1    litigation relating to the Pearl patents, SpectorSoft

2    products, or the subject matter of this agreement.

3            This was signed on the 24th of September, which

4    is the day, I think the day before.

5            THE COURT:  The day before the pretrial order

6    was filed.

7            MR. CONNOR:  Yes, Your Honor.

8            THE COURT:  Why do you object to producing a

9    copy of that to the defendant?

10           MR. CONNOR:  Because it contained -- it is

11   confidential, between the parties, and it contains some

12   terms that we are uncomfortable disclosing and don't want to

13   disclose to Awareness under the circumstances.  The parties

14   are continuing to discuss potential settlement.

15           I have no objection to providing the passage

16   that I just read to counsel and that page, and I can do

17   that.

18           THE COURT:  All right.  Well, I will let you

19   know if we need you to do anything further.

20           Is there anything in that argument that you

21   heard that you want to respond to?

22           MR. CONNOR:  No, Your Honor.  Thank you.

23           THE COURT:  All right.  We'll come back to this.

24           I think there are defense objections to certain

25   plaintiffs' witnesses that they want to call.  If that is

1   right, I'll hear about that now.

2           MR. PAZUNIAK:  Yes.  Well, plaintiffs have

3   proposed to put in the deposition testimony of two SpectorSoft

4   employees that were mentioned, and our objection is very

5   straightforward, which is it's irrelevant.  We don't under-

6   stand the purpose of calling SpectorSoft's technical people

7   to talk about what SpectorSoft did in an inequitable conduct

8   trial.  That's the irrelevancy part.

9           And the second part is, of course, we were not

10  invited to participate in those depositions and did not

11  participate in those depositions.  Therefore, those depositions

12  are technically hearsay.

13          But what the main objection is, there is no

14  possible relevance to it.  It is a waste of time and

15  prejudicial.

16          THE COURT:  All right.  Let me hear a response.

17          MR. CONNOR:  We explained to counsel that those

18  disclosures are related to this Cohen issue, the new expert

19  issue.  And I might add also that Awareness was not present

20  at either Dr. Cohen's deposition or the depositions of Mr.

21  Logson and Mr. Notzen who were both the patent attorneys

22  whose conduct is at issue here indirectly through their

23  representation of Pearl Software during the pendency of the

24  '237 claims.

25          THE COURT:  And what about the suggestion they

1    were not even invited to the depositions of the SpectorSoft

2    witnesses?  Is that correct?

3              MR. CONNOR:  That's correct.  It is a totally

4    different case, Your Honor.  That was about SpectorSoft and

5    SpectorSoft's theories and positions on infringement and

6    validity.

7              THE COURT:  So why is it not hearsay because of

8    the testimony of Mr. Chesley and Mr. Trivedi?

9              MR. CONNOR:  I think under Rule 32, they have

10   a good basis for objecting to that testimony, but if Dr.

11   Cohen is permitted to testify, we believe that, in fairness,

12   we should be able to present that testimony because that

13   testimony was from the case in which Dr. Cohen was

14   designated and was cross examined.

15             THE COURT:  Okay.  Thank you.

16             MR. CONNOR:  Thank you, Your Honor.

17             THE COURT:  Mr. Pazuniak, any reply?

18             MR. PAZUNIAK:  Your Honor, we objected, but

19   frankly if they want to waste their time, their three

20   and-a-half hours to read the testimony of those witnesses

21   to the Court and use up their time in that fashion, frankly,

22   my view is let them do it.

23             THE COURT:  Okay.  I'll treat that objection as

24   withdrawn, and plaintiffs are free, if they wish, to use

25   some or all of what they designated from Mr. Chesley and

1    Mr. Trivedi, subject, of course, to their time limit.

2              I promise I will come back to the question of

3    Mr. Cohen, but let's assume for purposes of the rest of this

4    hearing that trial is still open for two weeks from now.

5    What else do we need to discuss with Mr. Cohen.

6              MR. CONNOR:  Those are all of the issues --

7              THE COURT:  Let me make sure I can hear you.

8              (Mr. Connor comes to the podium.)

9              MR. CONNOR:  Those are all of the issues that I

10   think we have.  We have been negotiating and discussing the

11   exhibit lists.  It is still too long, and we have agreed to

12   continue conferring with Awareness' counsel to narrow that

13   down, reach as many agreements as we can.  We have a

14   schedule built in for raising any lingering objections with

15   Your Honor prior to the trial.

16             THE COURT:  Okay.  Thank you.  Mr. Pazuniak, are

17   there other issues you see?

18             MR. PAZUNIAK:  No, I think that is right.

19   I think plaintiffs have like 270 exhibits and they have

20   agreed that they will whittle it down.  There is also, they

21   designated some exhibits that frankly are designated as

22   exhibits that were used in the SpectorSoft trial.  I asked

23   for them, for copies of them as they were marked, so we have

24   the correct exhibits.  Counsel agreed to provide it, so I

25   don't think there is any dispute.

1              Those are just little minor procedural issues.

2     I think everything else is pretty clear.

3              Can I ask Your Honor just one question, given

4     that this is not a jury trial?

5              THE COURT:  Yes, absolutely.

6              MR. PAZUNIAK:  How would Your Honor like the

7     parties to present the depositions to the Court?

8              THE COURT:  Right.  In terms of reading versus

9     playing videos?

10             MR. PAZUNIAK:  Reading, playing videos.  Does

11    the Court prefer to have couple just read it or prefer to

12    have a witness sit in the witness box, some person sit in

13    the witness box and have a regular question and answer, the

14    way we sometimes do it but it's in a jury trial.

15             I apologize, Your Honor.  I haven't had a bench

16    trial with Your Honor, and so I'm not quite sure how Your

17    Honor prefers this.

18             THE COURT:  That's fine.  I don't know that I

19    have a preference, but if I do, I'm not consciously aware of

20    it.  And so what I would say is you should do whatever you

21    think is most effective for your side, and just understand

22    you are going to be charged for the time.  And you will

23    have to, of course, tell us what the break down is, the

24    percentage of time to charge to each side.

25             Since this is all going to happen in one day,

1    you will have to give that to me fairly expeditiously so we

2    can make sure we have all of your time.

3                    MR. PAZUNIAK:  Thank you, Your Honor.

4                    THE COURT:  Let me just say a few things about

5    the bench trial and if I see anything else in the pretrial

6    order here.

7                    So it is three and-a-half hours a side.  We can

8    start, we will start at 8:30.  I think our order may not

9    have said that, but we can and do want to start at 8:30.

10                   I'm trying my absolute best to keep that date

11   completely free for all of you so I don't get interrupted

12   with other matters.  If it happens, it happens.  But

13   assuming it doesn't, we'll try to keep the breaks relatively

14   short, something in the morning, something around lunch

15   time, and sometime in the afternoon until we get done, but I

16   do want to get done all in that one day.

17                   You are free to make an opening statement, if

18   you wish.  You are free to go make a closing argument, if

19   you wish.  You are not required to do either.

20                   On that one, I can say in my experience I have

21   found both to be helpful, but I know you have probably a

22   lot to accomplish.  I think you have given you enough time,

23   but you have a lot to accomplish in that time, and it will

24   not be held against you if you choose not to make an opening

25   and/or closing.  I'm broadly familiar with the issues and,

1    of course, sat through the jury trial which taught me

2    something about the technology at least.

3              In terms of, as I understand it, you have agreed

4    that, of course, the burden is on the defendants so the

5    defendants will go first.  That would be true for openings

6    and closings as well as for each witness and certain terms

7    of your case-in-chief, of course, as well.

8              The exhibits that you have listed, that's the

9    maximum universe of exhibits.  It is great if you can cut

10   them down, but certainly we're not going to be adding

11   exhibits unless there was some very unusual circumstance.

12             The same thing for the witnesses.  You have

13   listed the maximum number of witnesses.  Feel free to cut

14   down, but we won't be adding witnesses unless something

15   really unusual happened.

16             I can't think of -- well, I guess the only other

17   thing is you had set out a timing for identifying objections

18   to depositions.  That was fine.  Everything in your pretrial

19   order is fine, so it will govern.

20             In terms of objections to exhibits, make sure

21   you have that all ready to go at 8:30 on the morning of

22   trial.  Otherwise, if you raise an objection that could have

23   been raised earlier in the day, if you try to do it once the

24   witness is on the stand, I'm going to say it's too late,

25   it's waived.

1          And we will charge time for those arguments in

2     the morning, if we have them.  We'll charge all that time to

3     whoever raises the objections.

4          Has anything I said generated any questions,

5     Mr. Connor?

6          MR. CONNOR:  Nothing from the plaintiffs.

7          THE COURT:  Mr. Pazuniak?

8          MR. PAZUNIAK:  Nothing, Your Honor.

9          THE COURT:  Let me take a short break.  I'm

10    going to look at my calendar and decide whether we're going

11    to have this trial in October or not.

12          (Brief recess taken.)

13          *     *     *

14          (Proceedings reconvened after recess.)

15          THE COURT:  All right.  I have had a chance to

16    look at my calendar, and although I could probably fit in

17    a third day, it's a little dicey but I could probably do it,

18    I decided not to do that.  Instead, we're going to stick to

19    the schedule that we have, a schedule that I think has

20    allowed everyone to be fully and fairly prepared for trial.

21    And I am going to overrule the plaintiffs' objections and

22    we're going to allow Dr. Cohen to testify, if he appears and

23    is going to testify.  That will be up to Dr. Cohen.  It will

24    be up to the defendants.

25          I don't think this is unfairly prejudicial to

1      the plaintiffs.  In my view, the plaintiffs had known that

2      there was a trial on the calendar for mid-October.  It was

3      against two defendants, and presumably plaintiffs were

4      preparing as need be for that trial.

5              To the extent there is any difference in the

6      theories between SpectorSoft and Awareness, the plaintiffs

7      were presumably fully preparing to meet both of those

8      theories, and to the extent now one of those theories may

9      not be presented, I view that as an advantage for the

10     plaintiffs.

11             Nonetheless, if the plaintiffs think there is

12     something to be gained by trying to show me that there was

13     a conflict between the former defendant and the current

14     defendant, plaintiff will have that chance, as I understand

15     it without objection, but will have that chance to present

16     the designated testimony of Mr. or Dr. Reinman.  So all the

17     more reason I don't think there is any unfair prejudice to

18     the plaintiffs from my decision today.

19             To the extent the plaintiffs thought that their

20     bargain with SpectorSoft would somehow prevent the Court

21     from making this ruling, I don't see it that way.  And I

22     don't think anything I'm doing today is in any way

23     inconsistent with rights the Court has and always has

24     regardless of what contractual agreements two other parties

25     might make.

```
 1              I also do think, finally, that what I'm deciding

 2    is entirely fair and appropriate in the interest of the

 3    defendant that is still in front of me, which is Awareness.

 4              So we're on track and we're going forward with

 5    the schedule in place, and we'll do this one day trial on

 6    October 16th, and then, if need be, we'll see you all in

 7    December I think it is for the jury trial.

 8              Is there anything else we should talk about from

 9    the plaintiffs?

10              MR. SQUIRE:  No, Your Honor.

11              THE COURT:  No.  Okay.

12              MR. PAZUNIAK:  Nothing, Your Honor.

13              THE COURT:  Thank you all very much.  Enjoy your

14    weekend.

15              (Pretrial conference ends at 11:51 a.m.)

16

17         I hereby certify the foregoing is a true and accurate
      transcript from my stenographic notes in the proceeding.
18

19                          /s/ Brian P. Gaffigan
                            Official Court Reporter
20                           U.S. District Court

21

22

23

24

25
```